Case number 12-4338 United States of America v. Derrick Johnson Jr. Arguments not to exceed 15 minutes per side. Ms. Kerr, for the appellant, you may proceed. Thank you. Morning. Good morning, Your Honors. Laurie Kerr on behalf of defendant appellant Derrick Johnson. I would like to reserve 3 minutes of my argument for rebuttal. Sure. Thank you. This case is before this court this morning for two reasons. The first reason involves the expert testimony of Detective Sergeant Lambert. The district court primarily erred in admitting this expert testimony after the government failed to give timely notice to defendant's counsel in violation of Federal Rule of Criminal Procedure 16. However, if this court should find that the district court did not abuse its discretion in admitting Sergeant Lambert's testimony, the presentation of his testimony is still flawed because the district court failed to issue a cautionary instruction to the jury as to Sergeant Lambert's dual role in this case. Go ahead. Just to kind of cut to the chase on that one. It is plain error review, right? Why did this mingled testimony in his first appearance affect your client's substantial rights? Well, I think when you review the testimony, Sergeant Lambert was the second witness in a very long trial, and throughout the first grouping of testimony, he would go between national standards of how gangs behaved, how gang behavior went in California, New York, Chicago, L.A., and then he would throw in, well, LSP would do this, or we have knowledge that LSP is doing this. He didn't allow for the jury to take the information as to what national gangs were doing and then apply it as they heard other evidence throughout the trial to, oh, yeah, okay, well, national gangs do taggings on lampposts. We have now heard evidence from LSP gang members, local Youngstown police, that they found LSP taggings on lampposts. Well, maybe LSP is operating as a gang. He didn't allow the jury to make that conclusion for themselves. He sort of drew it for them at the very beginning of the trial, and that was their understanding from the outset. The government didn't set the basis for it. Okay. I thought that some of these gang members themselves echoed a lot of what he said on the expert side of things. In other words, like somebody disrespects you or whatever, you've got to fight back, retaliate. I mean, he says that generically, and they come in and just separately say that was their code. Absolutely. And I think that if he had testified generically only and then they came in and filled in the blanks, you don't have. . . But isn't a jury going to find these things or believe these things anyway, given. . . That's my point. I mean, it's not like the jury is reaching a conclusion they wouldn't otherwise reach if he doesn't mingle his testimony. I mean, they were going to. . . There's every reason to think they're going to conclude, yeah. I mean, these guys, if somebody disrespects them or whatever, they're going to fight back. I mean, that's just sort of the code that they have to maintain. But if they're tainted at the outset by someone the jury would already perceive as knowledgeable and that is telling the truth in that area, they may not have paid much purview to what the gang members are saying. Okay. And what is timely notice under the rule? Timely notice? Well, there is no specific standard. However, if you compare other cases from this circuit and the district, two, three days before trial is not enough to put the defendant on notice that a certain witness is testifying as an expert. If you look at the witness list, there were multiple police officers, federal law enforcement agents testifying in this case, and there was no indication in the discovery packet that Sergeant Lambert would be testifying as an expert. And so in it. . . What would you have done differently if you'd have got a longer notice? Well, I think that the trial counsel's intent, if he had been granted a continuance or if he had been given even a month, two months prior notice that Sergeant Lambert was the expert and what his expert testimony was going to be is that he would have sought out his own expert to combat some of the information that Sergeant Lambert would testify to. But you don't have any affidavit from any expert or anything to show that the sergeant's testimony was not true? My understanding is that he was given permission to seek out an expert. But, I mean, for purposes of asking for a new trial or coming here, there's nothing in the record that shows us that if he had gotten another expert, the testimony would have been any different. No, Your Honor. The second issue before the court today regards the district court amendment of the jury verdict forms for count 731 and 732. Defendant Appellant Johnson was charged with using and carrying a firearm in furtherance of a drug trafficking offense and maintaining a position in a gang. And the jury instructions connoted that it was an oar as well, and the jury noticed that it. . . I mean, we're familiar with it. Okay. But isn't there a case that we have that says exactly this, that if you charge in the conjunctive, you can still instruct in the disjunctive? There is, Your Honor. I mean, I understand your point about broader basis, but, I mean, there's a case that says you can do it. So what do we do with that? Well, I think you have to look at whether or not it goes to an essential element of the crime. I think you have to look at what the grand jury was presented with. The statutory language is written in the disjunctive, and the grand jury made a change to that statutory instruction and charged in the conjunctive. And so the argument there would be is if they've made that change at the grand jury level, the evidence presented at the grand jury showed used and carry, and now we're broadening the basis at trial because the testimony at trial maybe doesn't necessarily show both. It only showed used or carry. It didn't allow, the change did not allow the jury to convict him of a different offense than the offense he was charged with, right? Well, he was charged. Well, technically he wasn't charged with an existing offense. He was charged with the offense and something higher. Correct. Right. And so all the judge did was say, oh, that's not the offense. This is the offense. And the jury found him guilty of the offense. I mean, they were correctly instructed on the actual offense. According to the statutory language, is that what you're saying? Yes. If I understand you. Yes, I mean, he went back to the statutory language, but the grand jury indicted on the conjunctive. Well, it just means that he had an even higher threshold for the grand jury. That's all. I mean, you robbed this woman and you kicked your dog, and that's the indictment. And then when you go to trial, the judge strikes and you kicked your dog, and the jury's instructed did he rob the woman or not, and they find that he did. I mean, it's surplusage. If I may, when you're referencing you robbed and kicked the dog and you remove and kicked the dog, you're narrowing the basis for conviction, and here we're broadening. I think if you look at the testimony of the CI, of Deborah Newell, of Sherrick Jackson, you're not really. You're still broadening it when you kick the dog because they no longer have to find that you kicked the dog, so it's easier to convict, right? Well, I think under, and I believe it's Miller, U.S. v. Miller, that the removal of something from the indictment doesn't broaden. It narrows, and therefore it's not prejudicial. So therefore you're taking away another element that the government would have to prove. Right, but aren't you, maybe I misunderstand the facts, but when you change from and, okay, but the statute doesn't require and. Correct. So, but the grand jury chose to change that language, which would lead you to believe that they were indicting on the use and carry, that they heard evidence that he used and carried. Okay, but then, okay, so why, I still don't understand why it matters. Well, because I think if you look at the testimony of the victims in this case and how it would apply when the jury is considering the evidence, specifically let's go with the CI's testimony. It's unsure, given his testimony, as to whether or not a gun was used in his assault. However, there was evidence that a gun may have been present during the entire exchange, but maybe not necessarily during the assault. And so you have, well, we can't prove he used it, but we can still prove he carried it, versus the jury would have to find he used it during the assault and carried it during the assault. Now they can pick based on that. I know, but if the statute only requires one, what is the, what's the problem? What's the prejudice? What's the legal prejudice if the statute only requires one? Well, if he had been only charged, but he wasn't charged that way. He was charged with both. Okay. The statute, let me just think, aren't there different choices in the statute? Under 924C there's the use and carry of a firearm in furtherance of drug trafficking or crime of violence, and then there's possession. And so he was charged in his indictment, use and carry. The statute says use or carry. Use or carry. Right. Okay, so I realize that he was charged with both, and if the jury had been misinstructed in his favor, he would have had a better chance of acquittal. But I still don't understand why it's of any legal significance. Because I think that the overall fairness of the trial is affected when you broaden the basis for conviction on an essential element of the crime, which you have here. Well, was there any, was he defending the trial on the basis that he carried but didn't use it? I don't believe so, no, Your Honor. I see my time is almost up. If you don't have any further questions, I will reserve my time for rebuttal. Very well. Thank you. Mr. Rankin. Your Honor, I think on the verdict form, everything I've said is in my brief and given by what the questions are. I think I want to focus my argument on more of the expert witness, fact witness issue, if that's okay with the court. I understand nine days sounds like a lot of time, but when you've got a fairly long, complex trial, why would you not let them know? Why wait until the last minute? Ideally, I think you're right. I think it should have been given longer than, you know, May 28th is when they provided the summary and the trial started June 6th. Ideally, it should have been provided probably earlier. There is no time limit, Judge, as you noted in the rule. It's all case law. We all kind of look and see if there's prejudice in each case and what happened. Here, ideally, maybe, you know, they probably should have given it earlier. The fact that they didn't, I don't think really prejudiced Mr. Johnson. Mr. Johnson knew from the very beginning that he was charged in a RICO conspiracy with the LSP gang in the indictment, the superseding indictment. He knew it from the very beginning of this case. He also knew that gang, you know, the gang, workings of the gang were going to be a major part of this trial. And really, when you look at Lambert's testimony, his expert testimony, which was when he was testified second as this government's second witness, I don't know what kind of, you know, the district court gave Johnson a chance. Granted, you know, it's probably pretty hard to do this at the last minute, but he gave him a chance to go get an expert. He said, you know, you can get an expert. I was thinking, well, what's that expert going to say that Lambert didn't say? Lambert didn't say anything that was, all Lambert talked about was, you know, here's what I've done in my law enforcement career with gangs. Here's my training. Here's what I know, and here's what gangs do. This wasn't about, you know, the engineering of a rocket. No, it wasn't like a Dawbert situation, you know, which that came up a little bit in trial. 702, but it's a pretty simple 702. Right, it's not. But was his testimony, it wasn't like the first time he got on the stand it was all expert and the second time it was all fact, right? The first time he was on it was all mixed up, wasn't it? I don't think it really was. I mean, the second time I think was clearly all fact. I mean, you know, that was all just about here's how we use this confidential informant, here's what happened on the day that the confidential informant was discovered. So the second one was all fact. The first one, the way I read it and the way I remember it was mostly him talking just about here's what gangs do, here's what LSP does, and talking about how they transitioned from graffiti to social media to state their membership and allegiance to the gang and how reputation was important. I mean, that's all. Right, but he said here's what gangs do and here's what LSP does. Well, but that's still pretty general about here's what LSP has, in his experience, what LSP has done in Youngstown or Youngstown gangs. He didn't just say LSP. He said there were three or four other gangs, Circle Boys and 505s, and his testimony also applied to them. He said that's what they do and a lot of times violence happens because they insult each other on social media. He didn't say anything specific that LSP insulted. When he first testified as an expert witness, he didn't say anything specific like, well, LSP social media caused X. He was still talking generally in terms about what gangs do and what Youngstown gangs do. So it's, you know, should there have been an instruction, you know, no one asked for it again, but you're also looking at there was a clear demarcation, not only in time, but in the subject matter of his testimony, between his expert testimony and his fact testimony. And when he was testified the second time, he was the 54th witness, and all he talked about, that was clearly just factual. I mean, there's no expert testimony in there at all. And it's our position that there was enough of a demarcation there that the failure to give the instruction does not rise to plain hair. Okay. Thank you. Thank you. I'd like to touch briefly on the issue brought forth by the government in terms of the line of demarcation between Sergeant Lambert's two testimonies. Yes, there was a significant break in between and multiple witnesses. However, the line of demarcation doesn't necessarily just go with the number of witnesses. It's how the testimony is broken up. And if you look at both sets of testimony, both of them are intermingled between generic gang information and what LSP does. Even in his first testimony, he alluded to unsolved crimes, unsolved murders that LSP would have done in retaliation against other Youngstown gangs or in furtherance of their own gang. And I feel like, again, it just tainted the jury from the outset, this information. And then when he testifies a second time, the government doesn't make any clear delineation that the first time you testified, you were testifying in your area of expertise as an expert. This time you're testifying as to your investigation. I feel like they're both intermingled. You could have asked that question, couldn't you, of the expert? Are you testifying now as facts or are you testifying? Correct. Trial counsel could have done so, and I don't believe that that was. In his first set of testimony, trial defense counsel brought forth the information to the jury, oh, well, aren't you testifying as an expert? Prior to that, the jury hadn't heard that word before defense counsel brought that up. And then the second time he testified, I do believe that, I am not sure if it was Appellant Johnson's defense counsel or one of the others that brought it to the jury that said, oh, you have testified previously as an expert and now you're testifying, but it's the government's responsibility to make that line of demarcation for the jury, not defense counsel's. If there are no further questions, I thank the court, and we would just ask that you remand this case on the issues. Thank you. Very well. Thank you, Ms. Curd, and we note that you've been appointed pursuant to the Criminal Justice Act, and we want to thank you for your very fine representation of your client. Thank you. The case will be submitted. We're going to take a very short recess.